UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANNA M. HEEBNER,
an individual,

      Plaintiff,

v.

Case No.:

TRANS UNION LLC,
a limited liability company,

      Defendant.
_____/

## COMPLAINT

**COMES NOW**, Plaintiff, ANNA M. HEEBNER (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendant, TRANS UNION LLC (hereinafter, "Defendant"). In support thereof, Plaintiff states:

### PRELIMINARY STATEMENT

1. This is an action brought by an individual consumer for damages for damages for Defendant's violations of the FCRA wherein Defendant continued to incorrectly report a settled Capital One account as a derogatory, negative, or adverse account with an alleged balance still owed despite Plaintiff's repeated disputes to Defendant explaining and proving that such account should be reported as paid and closed.

### JURISDICTION, VENUE & PARTIES

2. Jurisdiction of this Court arises under 28 United States Code, Section

1

1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*.

3. Defendant is subject to the jurisdiction of this Court, as Defendant regularly transacts business in this District.

4. Venue is proper in this District as Defendant regularly conducts business in this District, and the acts and transactions described herein occur in this District.

5. At all material times herein, Plaintiff is a natural person residing in Pinellas County, Florida.

6. At all material times herein, Defendant is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 W. Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

7. Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 United States Code, Section 1681b.

8. Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

9. Under the FCRA, if a consumer disputes the completeness or accuracy

of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

10. Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

11. Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

12. Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other

3

consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

13. Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

14. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## **GENERAL ALLEGATIONS**

15. At all material times herein, Plaintiff is a "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a debt.

16. At all material times herein, Defendant reports information furnished by Capital One, N.A., f/k/a Capital One Bank (USA), N.A. "Capital One") with respect to a consumer credit card account, including but not limited to, a tradeline account referenced by account number ending -5322 (hereinafter, the "Account").

17. At all material times herein, Capital One and Plaintiff entered into a

Settlement Agreement (as that term is defined herein) wherein Capital One waived any alleged debt owed by Plaintiff regarding the Account.

18. Notwithstanding the immediately-aforementioned Settlement Agreement, Defendant failed to accurately report the Account with a zero-dollar balance due, and instead reported the Account as "past due," "charged off," and/or "written off," with an alleged balance due in the amount of $6,014.00.

19. At all material times herein, Defendant is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

20. At all material times herein, Defendant acts itself or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

21. All necessary conditions precedent to the filing of this action occurred, or Defendant waived or excused the same.

## FACTUAL ALLEGATIONS

### SETTLEMENT AGREEMENT WITH CAPITAL ONE

22. On or about August 12, 2019, Capital One filed a lawsuit against Plaintiff in the County Court of the Sixth Judicial Circuit, in and for Pinellas County, Florida,

with assigned case number 2019-006592-CO ("Lawsuit").

23. Capital One's Lawsuit was filed in an attempt to collect an alleged balance owed on the Account.

24. On March 3, 2023, Plaintiff filed her *Motion for Summary Judgment* in the Lawsuit.

25. On April 20, 2023, the Honorable Susan P. Bedinghaus, County Court Judge, entered an *Order Granting Defendant's Motion for Summary Judgment* ("Order").

26. On or about May 23, 2023, Plaintiff and Capital One entered into a *Joint Settlement Stipulation* regarding, among other things, the Account (hereinafter, "Settlement Agreement").[1]

27. Pursuant to the terms of the Settlement Agreement, if Capital One adhered to its obligations thereunder (i.e., pay the Settlement Amount), then Capital One and Plaintiff agreed "to release each other, and their attorneys, if any, from **all** claims as of the date of this Stipulation, whether known or unknown, arising out of the [A]ccount . . . ." (emphasis in original).

28. On or about July 21, 2023, Capital One complied with its obligations under the Settlement Agreement (i.e., remitted payment of the Settlement Amount).

29. In other words, through the Settlement Agreement, Capital One agreed to waive any alleged debt owed by Plaintiff with respect to the Account. *Id*.

30. As such, as of July 21, 2023, Plaintiff no longer owed a balance on the

---

[1] Of significance, the Settlement Agreement was filed in the Lawsuit making it a public record available for view without any limitation through the Pinellas County Clerk's website.

6

Account to Capital One.

31. Despite Plaintiff not owing a balance on the Account no later than July 21, 2023, Capital One and Defendant failed to report the Account with a zero-dollar balance due and instead continued to report the Account as past due, charged off, and/or written off with a balance remaining owed and due from Plaintiff in the amount of $6,014.00.

### DEFENDANT'S CREDIT REPORTING OF THE ACCOUNT

32. More specifically, in or around February 2024, Plaintiff obtained a copy of her consumer disclosure report from Defendant.

33. Despite Capital One entering into the Settlement Agreement with Plaintiff and complying, at the latest, with the obligations espoused thereunder on July 21, 2023, Defendant reported the Account with inaccurate, incomplete, and/or materially misleading information.

34. More specifically, as of February 2024, Defendant reported the Account as "past due," "charged off," or "written off," with an alleged balance due in the amount of $6,014.00.

35. The $6,014.00 balance allegedly past due, charged off, and/or written off was the balance allegedly owed by Plaintiff before Capital One entered into the Settlement Agreement.

36. As such, it is inaccurate and/or materially misleading to report a balance of $6,014.00 as still past due, charged off, and/or written off rather than reporting the Account with a zero-dollar balance as of July 2023.

## PLAINTIFF'S FIRST DISPUTE

37. In February 2024, Plaintiff initiated a dispute to Defendant (hereinafter, Plaintiff's "First Dispute").

38. Plaintiff's First Dispute advised Defendant that Plaintiff no longer owed a balance on the Account.

39. Defendant received Plaintiff's First Dispute.

40. Defendant communicated Plaintiff's First Dispute to Capital One.

41. On or about February 25, 2024, Defendant sent dispute results to Plaintiff.

42. More specifically, despite Plaintiff's First Dispute advising Defendant that Plaintiff no longer owed a balance on the Account, Defendant *still* reported the Account as "past due," "charged off," or "written off," with an alleged balance past-due in the amount of $6,014.00.

**43.** Clearly, Defendant failed to conduct a reasonable investigation in response to Plaintiff's First Dispute, because if Defendant had conducted reasonable investigations and re-investigations, Defendant would have known that the Settlement Agreement—a publicly available court record—eliminated Plaintiff's personal liability on the Account resulting in a zero-dollar ($0.00) balance.

## PLAINTIFF'S SECOND DISPUTE

44. On or about March 18, 2024, and with the assistance of her attorneys, Plaintiff sent a letter to Defendant disputing Defendant's credit reporting of the Account, advising that the Account should be reported with a zero-dollar balance due

8

and having no balance past due pursuant to the Settlement Agreement, and demanding that Defendant investigate and update accordingly (hereinafter, "Plaintiff's Second Dispute").

45. Plaintiff's Second Dispute provided sufficient information to allow the Defendant to identify Plaintiff's credit file, including Plaintiff's name, date of birth, last four digits of her social security number, her current address, and her prior address. Comp.

46. Additionally, Plaintiff's Second Dispute identified the underlying court case wherein Plaintiff and Capital One entered into the Settlement Agreement, including the case number, and enclosed copies of Plaintiff's credit reports and the Settlement Agreement in support of her dispute.

47. Defendant received Plaintiff's Second Dispute.

48. Defendant communicated Plaintiff's Second Dispute to Capital One, including all enclosed documents.

49. On or about April 13, 2024, Defendant sent a letter to Plaintiff in response to Plaintiff's Second Dispute including Defendant's dispute results.

50. More specifically, despite Plaintiff's Second Dispute clearly advising Defendant that Plaintiff settled and no longer owed a balance on the Account, Defendant allegedly verified its reporting and *still* reported the Account as "past due," "charged off," or "written off," with an alleged balance past-due in the amount of $6,014.00.

51. Clearly, Defendant failed to conduct a reasonable investigation in

response to Plaintiff's Second Dispute, because if Defendant had conducted reasonable investigations and re-investigations, Defendant would have known that the Settlement Agreement—a publicly available court record—eliminated Plaintiff's personal liability on the Account resulting in a zero-dollar ($0.00) balance.

52. Defendant's failure to conduct a reasonable investigation and re-investigations into Plaintiff's Second Dispute was unreasonable given the information provided in Plaintiff's Second Dispute.

### PLAINTIFF'S THIRD DISPUTE

53. As of April 30, 2024, Defendant was still reporting the Account inaccurately with an alleged past-due balance of $6,014.00.

54. On or about May 1, 2024, with the assistance of her attorneys, Plaintiff sent *another* letter to Defendant *again* disputing Defendant's credit reporting of the Account, *again* advising that the Account should be reported with a zero-dollar balance under the Settlement Agreement, and *again* demanding that Defendant investigate and update accordingly (hereinafter, "Plaintiff's Third Dispute").

55. Importantly, Plaintiff not only again enclosed a copy of the Settlement Agreement, but also a copy of the Order—a document also filed in the Lawsuit—in support of her Third Dispute.

56. Defendant received Plaintiff's Third Dispute including all enclosures.

57. Plaintiff did not receive a response from Defendant regarding Plaintiff's Third Dispute.

58. On or about June 20, 2024, due to Defendant's failure to respond to the

Third Dispute, Plaintiff obtained a copy of her consumer disclosure report from Defendant.

59. As of June 20, 2024, Defendant no longer reported the Account on Plaintiff's Trans Union disclosure report.

## DAMAGES

60. As a result of Defendant's unlawful reporting of the Account, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

61. Following Plaintiff's First Dispute, Defendant generated and published Plaintiff's credit reports containing the inaccurate past-due balance on the Account.

62. Overall, Plaintiff suffered damage to her credit reputation as a result of Defendant's conduct.

63. Plaintiff retained Swift Law PLLC and Bannon Law Group for the purpose of pursuing this matter against Defendant, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

64. The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendant.

65. As a result of Defendant's conduct, actions, and inactions, Plaintiff was

deterred from making further credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendant's derogatory and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

66. Additionally, as a result of Defendant's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite entering into the Settlement Agreement and performing her obligations under such agreement, Plaintiff must simply endure Defendant's unlawful reporting of the Account.

## COUNT ONE:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)

Plaintiff re-alleges paragraphs one (1) through sixty-six (66) as if fully restated herein and further states as follows:

67. Defendant is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

68. Defendant willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Account.

69. Despite Plaintiff entering into the Settlement Agreement with Capital One—wherein Capital One agreed to waive any alleged debt owed by Plaintiff on the Account—despite Plaintiff's repeated disputes advising Defendant of the same, and despite Plaintiff providing Defendant with documents supporting Plaintiff's dispute, Defendant continued to unlawfully report the Account with a balance owed that was allegedly "past due," "charged off," and/or "written off," in erroneous amounts resulting in the Account being reported as a derogatory, negative, or adverse account.

70. More specifically, despite Plaintiff not owing a balance on the Account as a result of entering into the Settlement Agreement with Capital One—and despite Plaintiff notifying Defendant of the same through Plaintiff's disputes including enclosed copies of the Settlement Agreement itself—Defendant continued to report the Account with an alleged balance past-due in the amount of $6,014.00.

71. Such reporting of the Capital One Account is false and evidences Defendant's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

72. The $6,014.00 balance written-off and/or charged-off was the full balance Plaintiff allegedly owed Capital One prior to the parties entering into the Settlement Agreement.

73. As such, it is inaccurate and/or materially misleading to report that the full balance of $6,014.00 was still "past due," "charged off," and/or "written off" at any time after July 2023.

74. Between February 2024 and the date of this Complaint, Defendant

generated and published Plaintiff's credit reports to Plaintiff's creditors and potential lenders including the above-referenced inaccurate, incomplete, and/or materially misleading information.

75. Overall, Defendant willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when investigating/re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Defendant credit reports and credit file.

76. As a result of Defendant's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was denied credit, was deterred from making additional/further credit applications as he believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

77. Defendant's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

78. Defendant's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or

both.

## COUNT TWO:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE
## SECTIONS 1681i(a)(1), i(a)(4), and i(a)(5), and i(a)(6)

Plaintiff re-alleges paragraphs one (1) through sixty-six (66) as if fully restated herein and further states as follows:

79. Defendant is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), 1681i(a)(4), 1681i(a)(5), and 1681i(a)(6) by: (1) failing to conduct reasonable investigations/re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; (2) failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; (3) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified; and (4) failing to provide results of each dispute investigation and/or reinvestigation to Plaintiff.

80. Specifically, Defendant willfully and/or negligently refused to properly investigate/re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

81. For example, after receiving Plaintiff's First Dispute—advised Plaintiff no longer owed a balance on the Account—Defendant failed to request any documents from Capital One and purportedly "verified" its reporting of the Account.

82. After receiving Plaintiff's Second Dispute—which enclosed a copy of the Settlement Agreement entered into by Plaintiff and Capital One— Defendant failed to request any documents from Capital One and wholly ignored the terms of the written Settlement Agreement Plaintiff enclosed with her Second Dispute.

83. Instead, following Plaintiff's Second Dispute, Defendant parroted purported verifications from Capital One, and continued to report the Account with a significant past-due balance.

84. Moreover, Trans Union did not send any dispute results to Plaintiff with respect to her Third Dispute.

85. Rather than conduct its own, independent investigation/re-investigation regarding Plaintiff's several disputes, Defendant solely relied on Capital One's blanket and parroted assertions that Defendant was entitled to report the Account with a derogatory past-due balance and late payment information, including but not limited to the inaccurate, incomplete, and misleading reporting of the Account as "past due," "charged off," or "written off," with an alleged balance due of $6,014.00 following the Settlement Agreement entered into between Capital One and Plaintiff.

86. Defendant did not request any documents from Capital One corroborating information furnished and/or verified by Capital One regarding Plaintiff and the Account in response to any of Plaintiff's disputes, and Defendant wholly ignored the documents submitted by Plaintiff with her repeated disputes.

87. Defendant's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

88. Plaintiff's Second Dispute explained in writing that Capital One agreed to resolve the Account pursuant to the Settlement Agreement and enclosed a copy of the Settlement Agreement, which provided sufficient information for Defendant to determine that the Account must be corrected, yet Defendant *continued* to report the Account as "past due," "charged off," and/or "written off," with an alleged balance due in the amount of $6,014.00.

89. As such, Defendant's investigation/re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and Defendant failed to subsequently correct the inaccurate information in Plaintiff's credit reports and credit files.

90. Such reporting is false and evidences Defendant's respective failures to conduct reasonable investigation/re-investigations of Plaintiff's repeated disputes.

91. Defendant's investigation/reinvestigations of Plaintiff's disputes were not conducted reasonably.

92. Defendant's investigation/reinvestigations merely copied, parroted, and relied upon the inaccurate Account information conveyed by Capital One.

93. Defendant's investigation/reinvestigations of Plaintiff's disputes were not conducted in good faith.

94. Defendant's investigation/reinvestigation procedures are unreasonable.

95. Defendant's investigation/re-investigations of Plaintiff's disputes were not conducted using all information and documents reasonably available to Defendant.

96. Defendant's investigation/reinvestigations were *per se* deficient by reason of these failures in Defendant's reinvestigations of Plaintiff's disputes and the Account.

97. As a result of Defendant's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was denied credit, was deterred from making additional credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendant's derogatory and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline accounts.

98. Defendant's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

99. Defendant's actions in violation of 15 United States Code, Sections 1681i(a)(1), 1681i(a)(2), 1681i(a)(4), and 1681i(a)(5) constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendant's conduct, Plaintiff respectfully requests an entry of:

    a. Judgment against Defendant for maximum statutory damages for

violations of the FCRA;

  b. Actual damages in an amount to be determined at trial;

  c. Compensatory damages in an amount to be determined at trial;

  d. Punitive damages in an amount to be determined at trial;

  e. An award of attorney's fees and costs; and

  f. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant and demands that Defendant and its affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

    Respectfully submitted,

    **SWIFT LAW PLLC**

    */s/ Aaron M. Swift*
    **Aaron M. Swift, Esq., FBN 0093088**
    Jordan T. Isringhaus, Esq., FBN 0091487
    Sean E. McEleney, Esq., FBN 125561
    11300 4th Street N., Suite 260
    St. Petersburg, FL 33716
    Phone: (727) 755-3676
    Fax: (727) 255-5332
    aswift@swift-law.com
    jisringhaus@swift-law.com
    smceleney@swift-law.com
    jmurphy@swift-law.com
    *Co-Counsel for Plaintiff*

    ~and~

**BANNON LAW GROUP**

*/s/ G. Tyler Bannon*
**G. Tyler Bannon, Esq., FBN 0105718**
1901 Dr. M.L. King Jr. Street N.
St. Petersburg, FL 33704
Phone: (727) 896-4455
Fax: (727) 895-1312
tyler@rbannonlaw.com
jessica@rbannonlaw.com
*Co-counsel for Plaintiff*